UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT PISCITELLO,

              Plaintiff,

             v.

NANCY A. BERRYHILL[1], Acting
Commissioner of Social Security,

              Defendant.

**Hon. Hugh B. Scott**

**16CV872V**

**Report
and
Recommendation**

    Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14, plaintiff, 20, defendant Commissioner).

## INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

    The plaintiff ("Robert Piscitello" or "plaintiff") filed an application for disability insurance benefits on August 2, 2013, seeking benefits from the onset date of September 15, 2009, through his date last insured of June 30, 2012 (R. 50). That application was denied

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated April 23, 2015, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 30, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 1, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 20). The motions were deemed submitted on November 3, 2017 (Docket No. 19).

## FACTUAL BACKGROUND[2]

Plaintiff was born in November 13, 1960 (R. 72; see Docket No. 14, Pl. Memo. at 4; Docket No. 1, Compl. ¶ 8), and has sixteen years of education (id.). He was last employed as an office manager, deemed light exertion work (R. 54). As an office manager, plaintiff also performed accounting and bookkeeping (a sedentary exertion job) (R. 54). Plaintiff there was able to lift ten pounds frequently, twenty pounds occasionally (R. 54, 212).

Plaintiff's impairments are rheumatoid arthritis, Reynaud's syndrome, degenerative disc disease, and osteopenia, all deemed to be severe by the ALJ (R. 50). The ALJ found, however, that the severity of these ailments did not meet Social Security regulation Listings 1.02 (arthroplasties), 1.03 (osteoarthritis and allied disorders), 1.04 (disorders of the back), or 14.02 (autoimmune disorders) (R. 51).

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 7.

## MEDICAL AND VOCATIONAL EVIDENCE

On July 8, 2009, plaintiff injured his left shoulder in a fall, sustaining a deformity (R. 51, 869-77). His left shoulder was dislocated and the shoulder was immobilized and he was discharged (R. 51, 869-77). On June 18, 2010, plaintiff went to Family Care Medicine Center for an annual examination by Dr. James Panzarella, noting the dislocation from the prior year (R. 52, 303-08; Docket No. 14, Pl. Memo. at 4). When examined, plaintiff was found to have normal body systems and full range of motion bilaterally in the upper extremities (R. 52, 303-08). On April 5, 2011, plaintiff complained of coolness and discoloration in the fingertips (R. 52), with his hand skin and nailbeds were purplish and mild changes in the fingernails (R. 52, 302, 320). In 2011, plaintiff was treated for Raynaud's syndrome and rheumatoid arthritis, with plaintiff prescribed exercise, Motrin for arthritic pain, and a Depo-Medrol injection for his back pain (R. 52). During examination in January 2012, plaintiff had a normal gait (R. 52).

The ALJ concluded that plaintiff's allegations as to the intensity, persistence, and limiting effects of his impairments were not fully credible (R. 53). During the July 28, 2014, hearing, plaintiff described his daily activities that were not limited to the extent the ALJ believed would show debilitating condition (R. 53). Plaintiff complained during the hearing of experiencing memory loss, reduced ability to concentrate, and reduced ability to complete tasks, and being unable to complete an eight-hour day or stay awake for eight hours (R. 53, 77). He also noted coldness in his hands and feet and skin discoloration (R. 53, 52, 76, 302, 320, see also R. 70-71). The ALJ, however, found that these conditions were from five years after the onset date (R. 53). The ALJ characterized plaintiff's treatment for these impairments as "essentially of a routine nature" (R. 53). The ALJ found that the record "does not contain any non-conclusory opinions,

supported by clinical or laboratory evidence, from treating or examining physicians indicating that the claimant was disabled as of the date last insured of June 30, 2012" (R. 53). The ALJ then found that plaintiff was able to perform daily activities, live alone, and take care of himself (R. 53). The ALJ also noted that plaintiff's subsequent medical evidence revealed more severe diagnoses than the ones prior to June 2012 (R. 53).

The ALJ found that plaintiff had a residual functional capacity to perform a full range of light work (R. 51). The ALJ determined that plaintiff's allegations were not fully credible (R. 53). The ALJ assigned little weight to the evaluation of Dr. Abrar Siddiqui, the consultant internal medicine specialist, who found that plaintiff had the full range of motion but also had mild to moderate limitations for pushing, pulling, or carrying heavy objects (R. 54, 780-84). Dr. Siddiqui also found that plaintiff should avoid performing overhead activity using both hands (R. 783). The ALJ concluded that plaintiff could resume his past relevant work as an office manager (R. 54).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

4

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). For Title II disability benefits, the claimant has to show that he became disabled on or before the date last insured, 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B); 20 C.F.R. § 404.130, here June 30, 2012 (Docket No. 20, Def. Memo. at 9-10).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

5

    (1) whether the plaintiff is currently working;

    (2) whether the plaintiff suffers from a severe impairment;

    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

    (4) whether the impairment prevents the plaintiff from continuing past relevant work; and

    (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

6

*Application*

In the instant case, plaintiff argues that the ALJ failed to develop the record in not obtaining a residual functional capacity opinion from plaintiff's treating physician (Docket No. 14, Pl. Memo. at 11-16; see Docket No. 21, Pl. Reply Memo. at 4-9). The ALJ also did not conduct a function-by-function analysis of plaintiff before finding his residual functional capacity (Docket No. 14, Pl. Memo. at 16-18; see Docket No. 21, Pl. Reply Memo. at 9-10). The ALJ did not consider Dr. Siddiqui's finding that plaintiff should not work when it is required to do overhead activity using both hands (Docket No. 14, Pl. Memo. at 18; R. 783). Plaintiff also faulted the ALJ in not doing a full and proper assessment of plaintiff's credibility (Docket No. 14, Pl. Memo. at 18-21).

Defendant Commissioner argues that the ALJ properly assessed plaintiff's credibility (Docket No. 20, Def. Memo. at 10-19), focusing on the pre-date of last insured record rather than the extensive record after that date (id. at 12-13). Under Second Circuit precedent, defendant contends remand is not required because a function-by-function analysis was not done (id. at 19-20), see Cichocki v. Astrue, 729 F.3d 172, 176-77 (2d Cir. 2013). Defendant asserts the ALJ applied the correct legal standards and his decision is supported by substantial evidence (id. at 20-23).

The ALJ focused on plaintiff's condition up to the date plaintiff was last insured, June 30, 2012 (R. 53; see Docket No. 20, Def. Memo. at 9). The issues then focus on whether there is evidence of plaintiff's disability prior to June 2012.

I.      Plaintiff's Residual Functional Capacity Assessment

    A.      Treating Physician

First, plaintiff faults the ALJ's residual functional capacity assessment for not obtaining the opinion of his doctor. After rejecting opinions of treating neurologist Dr. Bela Ajtai, or the opinions of Drs. Siddiqui and Kavita Subrahmanian (R. 53 & n.1), plaintiff contends the ALJ had an obligation to obtain his treating physician's records prior to June 30, 2012 (Docket No. 14, Pl. Memo. at 13). Defendant responds that there was no obvious gap in the record to require the ALJ to solicit further information (Docket No. 20, Def. Memo. at 21-22). The ALJ had left the record open at the end of the hearing for plaintiff to supplement and plaintiff did not add any medical records (id. at 23). Plaintiff, however, replies that the pre-last date of insurance record indicates significant diagnostic findings that the ALJ, as a layperson, could not evaluate without medical opinions (Docket No. 21, Pl. Reply Memo. at 4).

The ALJ did not evaluate plaintiff's treating physicians up to June 30, 2012 (Dr. James Panzarella of Family Medical Care Center, Dr. Jihad Abialmouna, and Dr. G. Richard Curl). He also did not determine if they had opinions as to plaintiff's disability up to the date of last insured, concluding that the record did not contain "any non-conclusory opinions, supported by clinical or laboratory evidence, from treating or examining physicians" indicating disability between September 15, 2009, to June 30, 2012 (R. 53, 54). Instead, the ALJ considered (and generally rejected) opinion evidence from consultative sources after the date of last insured (R. 53-54). Plaintiff points to treating neurologist Dr. Ajtai, but plaintiff appears to have first seen this doctor on July 30, 2012 (Docket No. 14, Pl. Memo. at 7), one month after the date of last insured (R. 716). He does not contend seeing DR. Ajtai prior to July 2012.

8

What is apparent is the gap in the record from September 2009 to June 30, 2012, and the ALJ's evaluation of any opinion as to plaintiff's disability. As was held in Covey v. Colvin, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (Wolford, J.), this case **should be remanded** for the ALJ to obtain competent treating medical evidence of plaintiff's residual functional capacity during the relevant period (Docket No. 14, Pl. Memo. at 15).

B.   Function-by-Function Analysis

Next, plaintiff wants a function-by-function analysis. Plaintiff concedes that, under Second Circuit precedent, the failure to conduct this function-by-function analysis does not constitute a per se legal error requiring remand (Docket No. 14, Pl. Memo. at 16; see also Docket No. 20, Def. Memo. at 19-20), Chichocki v. Astrue, 729 F.3d 172, 173-74 (2d Cir. 2013). With the omission just noted as to a treating physician opinion as to plaintiff's capabilities, **upon remand the ALJ also should consider** (if appropriate) a function-by-function analysis of plaintiff.

II.   Plaintiff's Credibility

Finally, plaintiff argues that the ALJ did not assess properly his credibility because the ALJ did not consider plaintiff's good work history (Docket No. 14, Pl. Memo.at 19-20; see Docket No. 21, Pl. Reply Memo. at 11). In this Circuit, a claimant with a good work history "is entitled to substantial credibility when claiming an inability to work because of a disability," Tarsia v. Astrue, 418 F. App'x 16, 19 (2d Cir. 2011) (quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)); see Hughes v. Colvin, No. 15CV181, 2017 U.S. Dist. LEXIS 42174, at *15-16 (W.D.N.Y. Mar. 22, 2017) (Skretny, J.); Szarowicz v. Astrue, No. 11CV277, 2012 U.S. Dist. LEXIS 105992, at *16-17 (W.D.N.Y. July 30, 2012) (Skretny, J.) (citations omitted)

9

(Docket No. 14, Pl. Memo. at 20).  The ALJ did not discuss plaintiff's work history, which he points out was extensive from age 17 until onset date (Docket No. 14, Pl. Memo. at 20), thus, his employment was not expressly noted in weighing plaintiff's credibility.  Defendant counters that the ALJ need not discuss every credibility factor so long as he explains the basis for his assessment, here resting upon the inconsistencies of plaintiff's claimed inability to perform daily activities with his statements of the activities he could perform (Docket No. 20, Def. Memo. at 14, 13) and the routine treatment plaintiff received (id. at 11-12).

Upon the remand recommended above, **plaintiff's overall credibility should be considered** in light of his work record.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 20) should be **DENIED** and plaintiff's motion for similar relief in his favor (Docket No. 14) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 5, 2018